FILED '11 FEB 23 11:44 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| BETTY ANN SIMINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | CV-09-670-TC |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

COFFIN, Magistrate Judge:

## INTRODUCTION

Plaintiff Betty Simington brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's decision should be reversed and remanded for an award of benefits.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Simington was fifty-one years old at the time of the administrative hearing. Admin. R. 827. She has a high school education and some community college credits. *Id.* at 828. Simington has worked in customer service positions as a retail clerk, appointment clerk, call center clerk, survey worker, and telephone sales person. *Id.* at 865. She has also worked as a document sorter, photo lab worker, receptionist, child care provider, and patient transporter. *Id.* at 866. She alleges disability beginning January 1, 2003 due to degenerative disc disease of the cervical and lumbar spine, fibromyalgia, depression, anxiety, and bipolar disorder. Simington's social security applications were denied initially and on reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on December 18, 2007. The ALJ determined Simington satisfied the insured status requirements for a claim under Title II through December 31, 2008. *Id.* at 13. Simington must establish that she was disabled on or before that date to prevail on her DIB claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on May 30, 2008 finding Simington not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), and 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). At step two, the ALJ determines if the claimant has a "severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.* At step three, the ALJ determines whether a severe impairment meets or equals a "listed" impairment found in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's severe impairment meets or equals a listed impairment, he is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p.

At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

When the adjudication reaches step five, the Commissioner must determine whether the claimant can perform any work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. at 142; 20 C.F.R. §§ 404.1520(g), 416.920(g). Here the burden of production shifts to the

3 - FINDINGS AND RECOMMENDATION

Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1566, 416.920(g), 416.966.

## THE ALJ's FINDINGS

At step one, the ALJ found that Simington had not engaged in substantial gainful activity since the alleged onset of disability. Admin. R. 15. At step two, the ALJ found that Simington had severe impairments of a depressive disorder, drug addiction, anxiety disorder, fibromyalgia, and degenerative disc disease of the cervical and lumbar spine. *Id.* She determined, at step three, that Simington's impairments did not meet or equal the criteria for a listed impairment enumerated in 20 CFR Pt. 404, subpt. P, appendix 1 (Listing of Impairments). *Id.* at 17. Assessing Simington's RFC, the ALJ found Simington was able to perform a modified range of light work activity. Simington's RFC is light work with a sit or stand option. She is limited to simple tasks involving minimal contact with the public and only occasional contact with co-workers. *Id.* at 18.

The ALJ elicited testimony from an impartial vocational expert (VE). *Id.* at 865-870. The ALJ found at step four that Simington could not perform her past relevant work. *Id.* at 26. The ALJ asked the VE whether a person with Simington's age, education, experience, and RFC was capable of performing other work. *Id.* at 867-868. The VE replied there were a significant number of jobs in the national economy that Simington could perform. *Id.* at 868-869. Based on the testimony of the VE, the ALJ found at step five that Simington could make a successful adjustment to other work that exists in significant numbers in the national economy and was not disabled within the meaning of the Social Security Act. *Id.* at 27.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)(citations omitted).

The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

## DISCUSSION

Simington alleges the ALJ erred in determining her RFC by improperly rejecting the opinions of her physicians and health care providers. She also contends the ALJ erred in evaluating her credibility and lay witness testimony. Simington argues that based on these errors, the ALJ improperly concluded at step five that she could perform work. The court has reviewed the extensive record in this case.

**I.      Medical Opinions**

Simington asserts the ALJ erred by rejecting the opinions of her treating physicians and health care providers. She further asserts the opinions are all consistent with her inability to work

5 - FINDINGS AND RECOMMENDATION

and there are no controverting opinions by a treating or examining physician. The ALJ rejected the opinion of Dr. Becher, Simington's primary care physician. Admin. R. 25. Dr. Becher wrote a letter on December 7, 2007, stating she treated Simington for arthritis, bipolar disorder and fibromyalgia. *Id.* at 810-811. She opined that Simington would be unable to work on an ongoing and consistent basis due to the combination of her mental and physical impairments. *Id.*

The ALJ rejected Dr. Becher's opinion. To reject an uncontroverted opinion of a treating physician, the ALJ must provide clear and convincing reasons based on substantial evidence in the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). In order to discount a treating physician's opinion that is controverted by another physician's opinion, the ALJ must provide specific and legitimate reasons based on substantial evidence. *Id.* An ALJ is not bound by a treating physician's uncontroverted opinion on the ultimate issue of disability, but cannot reject the opinion without providing clear and convincing reasons. *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998). A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons based on substantial evidence. *Id.* The ALJ's reasons are not sufficient to reject Dr. Becher's opinion.

The ALJ noted that although Dr. Becher prescribed psychotropic medication, Dr. Becher was not a psychiatrist or psychologist. Admin. R. 25. A treating physician need not be a psychiatrist in order to treat mental illness or provide "competent psychiatric evidence." *Lester v. Chater,* 81 F.3d 821, 833 (9th Cir. 1995), *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ also found that the diagnosis of bipolar disorder was unclear. She noted that Dr. Taylor, a treating psychiatrist, had noted there was strong evidence of bipolar disorder based in part on Simington's responses to the Bipolar Spectrum Disorders Scale. Admin. R. 25. However, Dr. Taylor also

6 - FINDINGS AND RECOMMENDATION

discussed the diagnosis of Bipolar Disorder II with Dr. Becher, and they agreed it was a good diagnosis. *Id.* at 490, 667. The ALJ further noted that Dr. Taylor reported Simington had greater problems with depression than hypomania. *Id.* at 25. However, that is typical in a diagnosis of Bipolar Disorder II.[1]

The ALJ found that Dr. Becher was acting as an advocate for Simington to help her receive disability benefits. *Id.* This finding appears to be based on what the ALJ states is Dr. Becher's conservative treatment and objective evidence regarding Simington's physical limitations. *Id.* Dr. Becher prescribed pain medication for Simington's fibromyalgia and arthritis. There is no cure for fibromyalgia and it is "poorly-understood within much of the medical community." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Fibromyalgia pain can fluctuate and medications and self-help measures may help lessen the severity of the symptoms, but there will still be days that are worse than others.[2] Dr. Becher's treatment is consistent with a fibromyalgia diagnosis. It is not clear what other treatment the ALJ would think was appropriate.

Dr. Becher also discussed Simington's degenerative arthritis in the neck and back, noting some encroachment of the bones onto her nerves in the mid cervical region and the L5-SI region.

---

[1] Bipolar II Disorder is characterized by a) the presence of history of one or more Major Depressive Episodes; b) the presence or history of at least one Hypomanic Episode; c) there has never been a manic episode; d) the mood symptoms are not better accounted for by other disorders; and e) there is clinically significant distress or impairment in functioning. "The symptoms must cause clinically significant distress or impairment in social, occupational, or other important areas of functioning (Criterion E). In some cases, the Hypomanic Episodes themselves do not cause impairment. Instead, the impairment may result from the Major Depressive Episodes or from a chronic pattern of unpredictable mood episodes and fluctuating unreliable interpersonal or occupational functioning. The American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), 392-397 (4th ed. 2000).

[2] Mayo Clinic Staff, "Fibromyalgia," available at www.mayoclinic.com/health/fibromyalgia/DS00079.

7 - FINDINGS AND RECOMMENDATION

Admin. R. 810. The most recent MRI of December 30, 2007 shows moderately severe degenerative facet disease at L4-5 which contributes to facet formation and a probable synovial cyst projecting medially off the right facet joint into the canal, resulting in at least mild if not moderate right L5 lateral recess stenosis. *Id.* at 808-809. The ALJ also found that Simington's symptoms were not "consistently severe." *Id.* at 25. Dr. Becher, however, opined Simington would not be able to sustain ongoing and consistent employment, not that she would not have some good days when she might be able to perform certain activities consistent with work. "Occasional symptom-free periods and even the sporadic ability to work are not inconsistent with disability." *Lester v. Chater,* 81 F. 3d 821, 833.

The ALJ also found that Dr. Becher downplayed the effect of Simington's cocaine use which began in 2007. *Id.* at 25. However, Dr. Becher stated in the letter that Simington had used cocaine, and was in a drug treatment program. *Id.* at 810. Dr. Becher further noted that Simington's depression and pain were longstanding and would be present on or off prescribed and illicit substances. *Id.* at 811. The ALJ also noted Dr. Becher did not reference what she termed Simington's "drug seeking behavior." *Id.* at 25. However, the record is clear that Dr. Becher was aware of Simington's over-use of prescription pain medications. Simington complained to Dr. Taylor in 2005 that she should not be "scolded" by Dr. Becher for using too much Vicodin for her fibromyalgia pain and that Dr. Becher would not refill her prescriptions when she ran out of medication early. *Id.* at 655, 671-672. Dr. Becher also required clean drug screens before providing Vicodin. *Id.* at 709-710, 721.

The ALJ found Dr. Becher's statement that Simington "would still be too fragile to hold competitive employment" whether or not she was using prescribed or illicit substances beyond Dr. Becher's area of expertise noting again Dr. Becher was not a psychiatrist. The ALJ noted the

8 - FINDINGS AND RECOMMENDATION

statement was speculative as there was no evidence Dr. Becher had access to Simington's mental health records. However, the record indicates that Dr. Becher discussed Simington's diagnosis and medications with Dr. Taylor, the treating psychiatrist. *Id.* at 490-491, 648, 667, 708, 710. In addition, the record indicates that Dr. Becher discussed Simington's condition with Simington's counselor, Andre Pruitt. *Id.* at 721. "An integral part of the treating physician's role is to take into account all of the available information regarding all of his patient's impairments-including the findings and opinion of other experts." *Lester v. Chater,* 81 F.3d at 833.

The ALJ further noted Simington had "extensive" daily activities that Dr. Becher failed to acknowledge in the letter. Dr. Becher's records indicate that she was aware of Simington's attempts at community college and her activity level and functioning level. Admin. R. 713, 719, 722, 725. In her letter, Dr. Becher noted Simington's limitations in performing household chores, cleaning, and shopping, which were also noted by Simington's daughter. *Id.* at 226-233, 810. Dr. Becher also noted the limitations on Simington's social functioning due to her deep depressions and anxiety. *Id.* at 810. The ALJ, in other parts of her opinion, cited Simington's work and school record. The ALJ noted Simington's part time enrollment in classes in 2005 which she dropped after a month and enrollment in a class in 2006, which was also discontinued. *Id.* at 22-23. The ALJ cites Simington's previous work record in 2002 and her part time work activity in 2006 of taking someone to church and appointments as indicative of her ability to work. *Id.* It is clear from both that while Simington has made frequent attempts to sustain work or school, she has been unable to do so. Id. at 397, 400, 485-486, 489, 502, 507, 681-682, 687, 719, 724-725.

Finally, the ALJ noted that Dr. Becher's opinion seems to be based primarily on the subjective reports of Simington, whom she found not credible. *Id.* at 25. However, Dr. Becher noted Simington had fibromyalgia and arthritis. This is consistent with the medical record,

9 - FINDINGS AND RECOMMENDATION

laboratory tests, and opinions of Drs. Beale, Swartzel, and Satyanarayan, 310, 329-333, 347-348, 728-730, 808-809. Dr. Becher's treatment of Simington's mental illness is based, in part, on her conversations with Symington's psychiatrist. Dr. Becher's opinion cannot be so easily discounted as she is in the best position to fully understand the totality of Simington's condition. Dr. Becher clearly stated in her letter that it is the combination of physical and mental impairments that makes Simington unable to work, not that one singly would do so. *Id.* at 810. In addition, the other medical evidence opinions do not controvert her opinion. The ALJ failed to provide sufficient reasons for rejecting Dr. Becher's opinion.

The ALJ discussed the opinion of Dr. Swartzel, Simington's physician from 1999 to 2004. *Id.* at 23-24. Dr. Swartzel treated Simington for headaches, chronic anxiety, back pain, disc bulge, hip pain, right shoulder pain, knee pain, neck pain, headaches, fatigue, sleep problems, high blood pressure, discogenic disease, and fibromyalgia. *Id.* at 307-310, 312, 316, 347-348, 350, 352, 354, 628-631. Dr. Swartzel noted on February 9, 2004 that Simington was not working because she felt unable to work, and he stated he agreed. *Id.* at 310. Dr. Swartzel prescribed Paxil for her anxiety, Trazadone for sleep problems, and Vicodin for pain. *Id.* at 316. He also referred Simington to Cascadia Behavioral Healthcare, and to Dr. Satyanarayan for a physiatry consultation. Dr. Swartzel further noted in April 2004 that Simington was off work "per our order." *Id.* at 308. Dr. Satyanarayan diagnosed fibromyalgia, history of disc bulge and an anxiety disorder. *Id.* at 329-330.

The ALJ found Dr. Swartzel's statement regarding Simington's inability to work too vague with no rationale, and based on Simington's report of symptoms. In addition, she noted that Swartzel made his statement in February 2004 and Simington stopped treatment with him August 2004, so there was no indication the disability would last twelve months. *Id.* at 23-24. However, Dr. Swartzel treated Simington for five years and noted her increased pain, facet changes, and discogenic

10 - FINDINGS AND RECOMMENDATION

disease. *Id.* at 347-348. His opinion regarding Simington's ability to work does not state whether it would be for twelve months or longer, but it does lend support to the opinion of Dr. Becher that Simington could not sustain work.

Dr. Taylor treated Simington for her mental health problems from May 2005 until his retirement in June 2007. *Id.* at 504-507, 643. His initial assessment in May 2005 noted a referral from a social worker due to some signs of bipolar disorder. *Id.* at 504. Dr. Taylor diagnosed major depression, single episode, social phobia, and gave her a Global Assessment of Function (GAF) of 38.[3] The ALJ gave little weight to Dr. Taylor's opinion because his GAF assessment was on the initial consultation and the rest of her exam was "fairly normal." She opined Dr. Taylor had likely adopted the GAF score, indicating severe functional impairment, from a previous report. *Id.* at 24. The ALJ also discounted his opinion because Simington cancelled or did not show up for many appointments. However, Simington saw Dr. Taylor fifteen times. *Id.* at 476, 482-486, 490-491, 504-507, 643, 646-655, 657-659. She attributed her cancellations to health problems, transportation issues, lack of money, and anxiety at leaving the house. *Id.* at 489, 646, 651, 656-657.

The ALJ stated that Dr. Taylor declined to write a letter in support of disability for Simington, which she interpreted as evidence that he did not view her as disabled. However, Dr. Taylor's notes indicate that Simington wanted him to help her get disability and he responded that a "doctor does

---

[3] The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 31 to 40 indicates some impairment in reality testing or communication (speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . .) The American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), 34 (4th ed. 2000).

11 - FINDINGS AND RECOMMENDATION

not make the decision, but submits information and there are other people who make decisions based on medical information or other information." *Id.* at 482.

The ALJ also cited Dr. Taylor's treatment record indicating his opinion that Simington exaggerated at times. *Id.* at 24. Dr. Taylor's cited notes indicate that Simington was afraid of inpatient treatment and spoke in an "exaggerated manner about her fear of 'crazy people.' She began to see the humor in her talk about 'crazy people,' and we both laughed a little and she said 'I can be funny.'" *Id.* at 683. Dr. Taylor does not state that Simington exaggerated her symptoms. The ALJ stated Dr. Taylor noted she made inconsistent statements regarding her attitude towards people. *Id.* at 24. Dr. Taylor noted her comments about being irritated with people and loving people. *Id.* at 675. However, none of this is inconsistent with her mental illness or a reason to discount Dr. Taylor's opinion.

The ALJ also discounted Dr. Taylor's opinion because of his "conservative" treatment. However, Dr. Taylor's notes indicate his consideration of a variety of psychotropic medications for Simington, including Lithium, Lamotrigine and Depakote, before prescribing Abilify. *Id.* at 482-483, 671-672. His notes also state Simington needed to be in psychotherapy. *Id.* at 651. The ALJ also found Dr. Taylor's notes indicated the medications were having a positive effect and Simington noted some improvement with them. *Id.* at 24. Dr. Taylor's notes in July 2006 state that Simington believed she was not as depressed, but still irritable and angry. *Id.* at 648. However, in October 2006 his notes indicate Simington was quite depressed, and complained of pain and not sleeping. *Id.* at 647.

The ALJ also noted Dr. Taylor recommended some volunteer work which Simington did not believe was possible and that he was concerned about her drug use. *Id.* at 25. Although this is noted

in his records, it is not clear how these are reasons to reject Dr. Taylor's assessment. Dr. Taylor's assessment also supports Dr. Becher's opinion regarding Simington's inability to work.

Andre Pruitt, a licensed clinical social worker, treated Simington from April, 2005 through August 2007. *Id.* at 508-513, 704. The ALJ rejected his opinion on Simington's functioning level and that she was unlikely to be able to maintain a job. The ALJ gave this opinion little weight because she found it vague and not supported by the record as a whole. *Id.* at 24. Pruitt diagnosed Simington with major depression, post traumatic stress disorder, panic disorder with agoraphobia, rule out bipolar disorder, and assigned a GAF of 38. *Id.* at 508-513, 688-693. He noted her lack of coping skills, financial issues and family problems. *Id.* Pruitt's notes describe Simington's fear of leaving the house, fear of being around people, racing thoughts, and depression. *Id.* at 480, 487, 489, 495, 502, 687, 724-725.

The ALJ also noted Pruitt thought Simington's mental condition was improving in 2006 and she would be able to start school again. Pruitt wrote a letter to Portland Community College on March 28, 2006. *Id.* at 738. He noted that Simington had symptoms of depression, Bipolar disorder, agoraphobia and physical ailments. Pruitt noted she had improved in treatment and was able to start school, starting with two classes and hopefully progressing to full time in 2007. *Id.* However, three months later, Pruitt's treatment notes indicate Simington had increased anxiety and dropped out of school and now needed a letter to return to school. *Id.* at 724-725. Pruitt's assessment is consistent with that of Dr. Taylor and Dr. Becker.

The ALJ discounted the opinions of Simington's treatment providers regarding her functional limitations, but gave great weight to the nonexamining state agency consultants' opinions. *Id.* at 23. Dr. Anderson, a state agency consultant, noted in April 2004 that Simington had moderate limitations in the ability to understand, remember and carry out detailed instructions; work with or in proximity

13 - FINDINGS AND RECOMMENDATION

to others; interact with the general public; and get along with co-workers. *Id.* at 248-250. She further noted Symington was limited to simple tasks, no public contact, and limited co-worker interaction. Dr. LeBray affirmed this opinion in June 2004 and noted Simington had moderate difficulty in maintaining social functioning. *Id.* at 250, 252-263. Dr. Rethinger found only mild limitations in June 2005. *Id.* at 267-283. In November 2005, Dr. Bates-Smith noted Dr. Taylor's diagnosis of Bipolar Disorder, and found while Simington's psychological impairments were severe, they were not at a listing level. *Id.* at 282. She found Simington's mental functioning level as non-severe. *Id.*

Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The Commissioner relies on medical and psychological consultants to make findings about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p. However, these reviewing sources do not treat or examine the claimant. These opinions alone are insufficient to constitute substantial evidence to reject the opinions of treating and examining physicians. *Lester v. Chater*, 81 F.3d at 831. Although these opinions could constitute substantial evidence if consistent with other evidence in the record, in this case they do not. *Andrews v. Shalala*, 53 F.3d at 1041; *Magallanes v. Bowen*, 881 F.2d 747, 752-753 (9th Cir. 1989).

Dr. Becher treated Simington for both her physical and mental impairments and assessed how the combination of these impairments affected Simington's ability to work. The other medical opinions by treating health care providers support Dr. Becher's assessment. The opinions of the state agency consultants are insufficient to constitute substantial evidence that Dr. Becher's assessment

is incorrect. The ALJ erred in rejecting the opinion of Dr. Becher that Simington is unable to maintain work due to the combination of her physical and mental impairments.

## II     Remand

The ALJ erred in evaluating the medical evidence and improperly rejected the opinion of Dr. Becher, Simington's treating physician. Dr. Becher stated the combination of Simington's mental and physical impairments make Simington unable to maintain work. Social Security regulations require the disability analysis to include consideration of the effect of all impairments, "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923.

Dr. Becher also stated that Simington's impairments would prevent her from holding competitive employment whether or not she used prescribed and illicit drugs. When substance abuse is a contributing factor material to the determination of disability, the main issue is whether or not a claimant would be disabled if they stopped using drugs or alcohol. *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998), 20 C.F.R. §§404.1535, 416.935. "Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too." *Sousa v. Callahan*, 143 F.3d at 1245. The ALJ cites the opinion of Dr. Bates-Smith, a nonexamining psychologist, that many of Simington's symptoms were attributed to her use of narcotic pain medications and lack of exercise. Admin. R. 21, 282. Dr. Bates-Smith also noted in 2005 that Simington's psychological impairments were severe, but not of a listing level. *Id.* at 282.

Dr. Bates-Smith did not opine that Simington would not have psychological impairments if she were off of pain medications. The ALJ found that Simington's "continued complaints are consistent with her recently acknowledged cocaine use." *Id.* at 21. This opinion of the ALJ is not based on any medical opinion. In fact, it is contrary to the medical opinion of Simington's treating

15 - FINDINGS AND RECOMMENDATION

physician. The ALJ cannot substitute her opinion for that of an uncontroverted treating physician's opinion. *See, Davis v. Heckler,* 868 F.2d 323, 327-328 (9th Cir. 1989). The ALJ could have ordered a consultative examination on this issue, but did not.

Simington makes other claims of error on the part of the ALJ. Although the court generally agrees these claims have merit, there is no reason to address them. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000), *cert denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

Improperly rejected evidence should be credited and an immediate award of benefits directed where

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178, citing *Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir. 1996). Of course, the third prong of this test is actually a subpart of the second. *Id.* at 1178 n. 7.

The improperly rejected evidence in this case establishes that the combination of Simington's impairments make her unable to maintain employment. The evidence also establishes that this is the case despite use of prescribed and illegal drugs.

## RECOMMENDATION

For the reasons set forth above, the Commissioner's final decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. Section 405 (g) for the calculation and award of benefits.

DATED this 23 day of February, 2011.

_____
Thomas M. Coffin
United States Magistrate Judge